UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISC A. HUMES,<br>    Plaintiff,<br>v.<br>CA HIGHWAY PATROL, et al.,<br>    Defendants. | Case No. 5:21-cv-04494 EJD (PR)<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT; GRANTING ADMINISTRATIVE MOTION TO FILE UNDER SEAL**<br><br>Re: Dkt. Nos. 78, 79 |

Plaintiff, a state prisoner proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983 against the California Highway Patrol ("CHP") and the Monterey County Sheriff's Department. Dkt. No. 1.[1] The Court dismissed the complaint with leave to amend. Dkt. No. 10. Plaintiff filed an amended complaint. Dkt. No. 11. The Court found the amended complaint stated a cognizable claim for excessive force under the Fourth Amendment against Defendant William C. Hija.[2] Dkt. No. 15. The parties attempted settlement without success. Dkt. Nos. 69, 76. On October 2, 2024, the Court lifted the stay and granted Defendant leave to file a renewed dispositive motion. Dkt. No. 77.

---

[1] The Court dismissed Plaintiff's claim seeking release from jail, directing him to challenge the lawfulness of his continued confinement in a separate habeas action. Dkt. No. 10 at 3-4.

[2] Plaintiff was granted leave to move to amend to substitute the names of three unknown CHP officers against whom the allegations were sufficient to state a failure to intercede claim. Dkt. No. 15 at 3. However, at no time did Plaintiff move to do so. Moreover, from the undisputed facts presented by Defendants, it no longer appears that Plaintiff has a viable claim for failure to intercede against any of the officers who were involved in the underlying incident.

On October 16, 2024, Defendant filed a motion for summary judgment,[3] Dkt. No. 79, and an administrative motion to file under seal exhibits containing confidential medical information and medical records of Plaintiff, Dkt. No. 78. Because medical records are deemed confidential under the Health Insurance Portability and Accountability Act of 1996 ("HIPA"), the motion to file under seal is GRANTED.

On November 27, 2024, Defendant noticed the Court of Plaintiff's failure to file an opposition in the time provided. Dkt. No. 80. However, the amended complaint is verified and therefore may be treated as an opposing affidavit.[4]

For the reasons discussed below, Defendant's motion for summary judgment is **GRANTED**.

## DISCUSSION

### I. Statement of Facts[5]

The underlying events took place on March 5, 2021, when Plaintiff attempted to flee the scene after a high-speed car chase on US 101 involving the CHP and the Monterey

---

[3] In support of his motion, Defendant submits the declarations of Deputy County Counsel Ellen Sue Lyons, Dkt. No. 79-1, Defendant Hija, Dkt. No. 79-2, Jeanne Hopkins (Management Analyst III for the Monterey County Sheriff's Office and Ombudsperson), Dkt. No. 79-3, and Officer Dylan Watson of the CHP, Dkt. No. 79-4. With the declarations, Defendant submit the following exhibits: (A) copy of the Minute Order from the August 13, 2021, criminal trial of Plaintiff, setting forth the jury's verdict, Dkt. No. 79-1; (B) transcript from Plaintiff's deposition on January 25, 2023, id.; (C1 and C2) sealed copies of grievances by Plaintiff while at Monterey County Jail, Dkt. No. 78-1; (D) sealed copies of Plaintiff's medical records from American Medical Response, id.; and (E) sealed copies of Plaintiff's medical records from Natividad Medical Center, id.

[4] A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge); see also Keenan v. Hall, 83 F.3d 1083, 1090 n.1 (9th Cir. 1996), amended, 135 F.3d 1318 (9th Cir. 1998) (treating allegations in prisoner's verified amended complaint as opposing affidavit).

[5] The following facts are not disputed unless otherwise stated.

2

Sheriff's Department. According to Plaintiff, the incident was "following a PTSD episode brought on by [an] attempted traffic stop." Dkt. No. 11 at 3.

At approximately 10:34 p.m., CHP Officer Dylan Watson was on duty, in uniform, driving a CHP patrol car. Watson Decl. ¶ 3, Dkt. No. 79-4. He was traveling southbound on US 101 just north of San Miguel Canyon Road when he observed a Chevrolet Silverado traveling in the same direction in the number one lane; the driver was later identified as Plaintiff. Id. Officer Watson observed Plaintiff cut off a semi-truck and rapidly apply the brakes which forced the semi-truck to rapidly decelerate and swerve into the shoulder to avoid a collision with Plaintiff's vehicle. Id. ¶ 4. Officer Watson followed Plaintiff as he exited onto San Miguel Canyon Road, at which point Plaintiff accelerated and cut across the gore point back onto southbound US 101. Id. Officer Watson activated the radar antenna and determined Plaintiff was traveling 94 mph in a marked 65 mph zone. Id. ¶ 5. When Officer Watson attempted to overtake the Silverado, it accelerated, swerved in front of a pickup truck, and cut across another gore point to take the SR-156 off-ramp. Id.

Officer Watson activated his emergency lights and siren and notified Monterey CHP that he was in pursuit of a reckless driver. Id. ¶ 6. He followed Plaintiff on surface streets in north Monterey County and observed him driving recklessly – speeding, failing to yield and check for traffic, failing to stop at stop signs and red lights, cutting off other vehicles, straddling lanes, driving the wrong side of the road. Id.

Plaintiff then merged onto northbound US 101 from Ralph Lane and travelled into the number one lane where he continued passing other motorists at speeds over 100 mph. Id. ¶ 7. He also turned off the headlights of the Silverado in an effort to evade Officer Watson. Id. While attempting to exit US 101 at Pesante Road, Plaintiff collided with the dirt berm in the turn island due to his high speed. Id. He was able to free the Silverado from the berm and continued his efforts to evade Officer Watson. Id.

At some point during the pursuit, Defendant Deputy Hija arrived with flashing red and blue lights in his Monterey Sheriff's patrol vehicle, in response to the radio call of a

lone CHP unit in pursuit. Id. ¶ 8; Hija Decl. ¶¶ 3, 4. Defendant Hija observed the Silverado truck drive through the intersection of Cross Road at Reese Circle without stopping at the stop sign for the cross traffic, then proceed East on Reese, take the overcrossing to Blackie Road, and finally South on US 101. Id. ¶ 4. Another CHP officer, Officer Todd, joined the pursuit. Watson Decl. ¶ 9. Officers continued the pursuit as Plaintiff entered, exited, and re-entered US 101. Id.; Hija Decl. ¶ 5. As the three officers attempted to box in the Silverado, Plaintiff intentionally collided head-on into Officer Todd's patrol vehicle while heading southbound on northbound US 101. Watson Decl. ¶ 9. When Officer Watson positioned his vehicle behind the Silverado, Plaintiff accelerated in reverse into Officer Watson's patrol car. Id. After Defendant Hija positioned his vehicle in front to prevent Plaintiff from fleeing, Plaintiff accelerated the Silverado and crashed into Defendant Hija, attempting to push him away; Defendant Hija accelerated to counter the Silverado's movements. Id.; Hija Decl. ¶ 6.

    Officer Watson exited his vehicle, drew his weapon, and ordered Plaintiff out of the Silverado. Watson Decl. ¶ 10. Plaintiff exited the vehicle, briefly put his hands in the air, and then took off running. Id. Officers pursued him on foot. Id.; Hija Decl. ¶ 7. Officer Watson ran after Plaintiff and tackled him, but he and the other officers, including Defendant Hija, had difficulty controlling Plaintiff's hands. Id. According to Defendants, Plaintiff repeatedly refused to comply with officers' orders and kept trying to escape. Id. Defendant Hija held onto Plaintiff's head and part of a shoulder to prevent Plaintiff from escaping. Hija Decl. ¶ 7. Officers were eventually able to gain control of Plaintiff, handcuff him and place him in custody. Id.; Watson Decl. ¶ 10.

    According to Plaintiff, after he was tackled to the ground, Defendant Hija applied a "carotid choke[hold]" which caused him to lose consciousness. Dkt. No. 11 at 3. Plaintiff claims that he "put up no physical resistance and complied with officers' demands until rendered unconscious, losing his bowels." Id.

Officers conducted a search incident to arrest and discovered multiple counterfeit driver's licenses in the Silverado which contained Plaintiff's photo and different names. Watson Decl. ¶ 11. Officers determined Plaintiff's true name and learned he was wanted in Monterey County for prior pursuits and vehicle thefts, that he was on bail, and had a suspended California driver's license. Id.

American Medical Response was called to take Plaintiff to Natividad Medical Center ("NMC"). Ex. D, Dkt. No. 78-1 at 165. Once at NMC, Plaintiff was examined by the trauma team. Ex. E, Dkt. No. 78-1 at 177. According to Defendant, Plaintiff was then released back to the officers in charge, who took him to Monterey County Jail where he was booked. Dkt. No. 79 at 8.

On August 13, 2021, Plaintiff was found guilty by a jury of violating Penal Code Sections 245(c) (assault with a deadly weapon upon a peace officer), 148(a)(1) (resisting arrest), as well as other charges. Ex. A, Dkt. No. 79-1 at 4-6.[6]

## II. **Summary Judgment**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

---

[6] All references to exhibits in this order are to the exhibits filed in support of Defendant's summary judgment motion. Dkt. Nos. 78-1, 79-1.

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. See Celotex Corp., 477 U.S. at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id. at 325. If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted. See Liberty Lobby, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 324 (citations omitted). If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." Id. at 323.

The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a material fact. See T.W. Elec. Serv., Inc. V. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. See id. at 631. It is not the task of the district court to scour the record in search of a genuine issue of triable fact. Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. Id. If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party. See id.; see, e.g., Carmen v. S.F Unified School Dist., 237 F.3d 1026, 1028-29 (9th Cir. 2001).

### A. **Excessive Force**

Excessive force claims which arise in the context of an arrest or investigatory stop of a free citizen are analyzed under the Fourth Amendment reasonableness standard. See Graham v. Connor, 490 U.S. 386, 394-95 (1989); Forrester v. City of San Diego, 25 F.3d 804, 806 (9th Cir. 1994).

"To determine whether officers used excessive force during an arrest, courts balance 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" Luchtel v. Hagemann, 623 F.3d 975, 980 (9th Cir. 2010) (quoting Graham, 490 U.S. at 396). In the Ninth Circuit, evaluation of an excessive force claim under Graham involves three steps: (1) assessment of the severity of the intrusion on Fourth Amendment rights by evaluating the type and amount of force used; (2) evaluation of the government's interest in the use of force; and (3) balancing the gravity of the intrusion on the individual with the government's need for the intrusion.[7] Glenn v. Washington County, 673 F.3d 864, 872 (9th Cir. 2011).

In characterizing the type and amount of force used, the court should look to the specific factual circumstances of each case. Rice v. Morehouse, 989 F.3d 1112, 1121 (9th Cir. 2021). To evaluate the state's interests at stake, the court should consider (1) how severe the crime at issue was, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight, with the second factor the most important. Id. at 1123 (applying factors and finding that state's interests were insubstantial where arrestee had failed to signal for a full five seconds before changing lines and was suspected of driving under the influence). These factors are non-exhaustive, and the court must examine the totality of the circumstances, including the availability of less intrusive alternatives to the

---

[7] Defendant applies the standard set forth in the Ninth Circuit jury instructions on reasonable force. Dkt. No. 79 at 10. However, analysis under Graham is the proper legal standard.

force employed and whether proper warnings were given. Id. at 1122.

"The operative question in excessive force cases is 'whether the totality of the circumstances justifie[s] a particular sort of search or seizure.'" County of Los Angeles v. Mendez, 581 U.S. 420, 421 (2017) (alteration in original) (quoting Tennessee v. Garner, 471 U.S. 1, 8-9 (1985)).

A defendant is entitled to summary judgment on a claim of excessive force during arrest where there is no genuine issue for trial because the record taken as a whole would not lead a rational trier of fact to find for the plaintiff. See Henderson v. City of Simi Valley, 305 F.3d 1052, 1061 (9th Cir. 2002) (summary judgment in favor of defendant proper where evidence in the record in support of plaintiff's excessive force claim was "woefully sparse"); see also Arpin v. Santa Clara Valley Transportation Agency, 261 F.3d 912, 922 (9th Cir. 2001) (plaintiff's statement that she "did not resist arrest in any way" is conclusory allegation that is insufficient to defeat defendant's motion for summary judgment).

**B.  Analysis**

Plaintiff alleges that he "put up no physical resistance and complied with officers' demands" such that Defendant Hija's application of a chokehold that caused him to lose consciousness and his bowels constitutes excessive force. Dkt. No. 11 at 3.

Defendant contend that after he was tackled to the ground by Officer Watson, Plaintiff resisted being handcuffed. See supra at 4. Even after other officers arrived, Plaintiff was difficult to control. Id. Defendant Hija states that he assisted other officers by holding Plaintiff's head and one shoulder and denies that he employed a choke hold on Plaintiff. Dkt. No. 79 at 10. Defendant asserts that evaluating the circumstances in the light most favorable to Plaintiff shows that the use of force was reasonable under the circumstances. Id. at 10-15. Plaintiff has filed no opposition in response.

After a careful review of the evidence, the Court finds there are no genuine issues of material fact as to whether Defendant Hija used excessive force during the course of

1  Plaintiff's arrest. With regard to the first Graham step, while there is a dispute whether
2  Plaintiff was resisting, it is not a genuine dispute such that a reasonable jury could return a
3  verdict for Plaintiff. Plaintiff asserts that Defendant Hija tacked him to the ground and
4  applied a chokehold. However, Officer Watson, a non-party, states that he was the one
5  who tackled Plaintiff. Watson Decl. ¶ 10. He also attests that he and at least two other
6  officers, which included Defendant Hija, had difficulty controlling Plaintiff's hands and
7  that Plaintiff repeatedly refused to comply with their orders and kept trying to escape. Id.
8  Furthermore, Defendant Hija denies putting a chokehold on Plaintiff and states that he held
9  onto Plaintiff's head and part of a shoulder to prevent Plaintiff from escaping. Hija Decl. ¶
10 7. Moreover, the paramedic's report of their assessment of Plaintiff was that he was
11 "altered, not following commands or answering questions," and that "Officers suspect drug
12 use, drug paraphernalia on scene." Dkt. No. 78-1 at 167. In light of the evidence of
13 Plaintiff's failure to follow commands and apparent resistance due to his altered state, it
14 cannot be said that the type and amount of force used, i.e., holding Plaintiff's head and a
15 shoulder until he was handcuffed, was excessive under the first Graham step.
16     Secondly, it is undisputed that Plaintiff led several officers on a high-speed car
17 chase during which he exited and entered US 101 several times in an effort to evade arrest.
18 Moreover, Plaintiff admits in the amended complaint that he attempted to flee on foot.
19 Dkt. No. 11 at 3. Accordingly, under the second Graham step, the government's interests
20 at stake were high, considering the severity of Plaintiff's multiple crimes (which included
21 several counts of evading peace officer and assault officers with his car), the fact that he
22 posed an immediate threat to the safety of the officers and others, and he was actively
23 resisting arrest and attempting to evade arrest by flight. See Rice, 989 F.3d at 1123.
24 Lastly, balancing the gravity of the intrusion with the government's need shows that
25 Defendant Hija's actions were reasonable in his efforts to assist other officers to gain
26 Plaintiff's compliance under the third Graham step.

In contrast to Defendant's evidence, Plaintiff provides only a conclusory assertion that he was not resisting and was in compliance with orders. It cannot be said that this "woefully sparse" evidence in support of Plaintiff's excessive force claim in light of the record taken as a whole would lead a rational trier of fact to find for Plaintiff in this regard. See Henderson, 305 F.3d at 1061; Arpin, 261 F.3d at 922.

Based on the evidence presented, Defendant has demonstrated the absence of a genuine issue of material fact with respect to Plaintiff's excessive force claim against him. See Celotex Corp., 477 U.S. at 323. In response, Plaintiff has filed no opposition identifying with reasonable particularity the evidence that precludes summary judgment. See Keenan, 910 F.3d at 1279. Because no reasonable fact finder could conclude that Defendant used excessive force, Defendant is entitled to judgment on the claim against him. Id.; see Celotex Corp., 477 U.S. at 323.

## CONCLUSION

For the reasons stated above, Defendant William C. Hija's motion for summary judgment is **GRANTED**.[8] Dkt. No. 79. The excessive force claim against him is **DISMISSED** with prejudice.

Defendant's administrative motion to file under seal is **GRANTED**. Dkt. No. 78. This order terminates Docket Nos. 78 and 79.

**IT IS SO ORDERED.**

Dated: December 27, 2024

_____
EDWARD J. DAVILA
United States District Judge

---

[8] Because the Court finds no constitutional violation occurred, it is not necessary to reach Defendant's qualified immunity argument.

10